UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STRUCTURAL POLYMER GROUP, LTD., and STRUCTURAL POLYMER SYSTEMS, LTD., | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) No. 4:05-CV-321 (CEJ) ) |
| ZOLTEK CORPORATION, | ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion for summary judgment on Count II of plaintiffs' second amended complaint. Plaintiffs oppose the motion and the issues are fully briefed.

Plaintiffs Structural Polymer Group, Limited (SPG) and Structural Polymer Systems, Limited (SP Systems) bring this action against defendant Zoltek Corporation, asserting two claims of breach of contract, based upon defendant's failure to supply two carbon fiber products – PANEX 33 and PANEX 35 – in compliance with an exclusive requirements contract. Plaintiffs claim that defendant breached the parties' agreement by refusing to provide PANEX 35 as a substitute for PANEX 33 (Count I) and by failing to provide PANEX 33 (Count II). Defendant has filed a counterclaim for breach of contract.

Defendant previously moved for summary judgment on Count I of plaintiffs' complaint, arguing that the Supply Agreement applied only to PANEX 33. The Court concluded that the Agreement was ambiguous in that the crucial terms were reasonably susceptible to

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

more than one interpretation and denied summary judgment on Count I. In this motion defendant seeks summary judgment on plaintiffs' PANEX 33 claims in Count II.

## I. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

-2-

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

**II. Background**

Defendant Zoltek manufactures large filament count carbon fibers, including the PANEX 33 and PANEX 35 products. Plaintiffs use the carbon fibers to produce prepregs and fiber-reinforced composites which they in turn sell to manufacturers of wind turbine blades.

On November 6, 2000, SPG and defendant Zoltek executed a Supply Agreement pursuant to which defendant agreed to supply 100% of SPG's and SP Systems' needs for carbon fibers, through December 31, 2010. Paragraph 1 of the Supply Agreement contains the following definition:

> "**CARBON FIBERS:** Large Filament Count Carbon Fibers ("the Carbon Fibers") as defined by Zoltek PANEX 33 specifications."

Defendant manufactured PANEX 33 from an acrylic fiber precursor which it obtained from Acordis UK Ltd. (Acordis). At the time the Supply Agreement was signed, defendant was in the process of developing the capacity to produce its own precursor. In 2002, defendant introduced PANEX 35, which is made with defendant's own precursor material. PANEX 35, unlike PANEX 33, was tested and certified for design and production of wind blades, and defendant considered PANEX 35 to be the superior product. PANEX 35 is also easier to process than PANEX 33.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The demand for carbon fibers for use in the wind energy market increased in 2003. In 2004, plaintiffs' customers began requesting product made from PANEX 35. In April 2004, the parties executed a Supply/Purchase Agreement, by which defendant agreed to provide and plaintiff agreed to order a minimum of 160 metric tons of PANEX 35 during 2004. In June 2004, plaintiffs requested an additional 84 metric tons for that year. By mid-2004, defendant was struggling fill plaintiffs' orders for PANEX 35 in a timely manner. Delays in delivering the product caused significant disruption in plaintiffs' manufacturing operations.

In July 2004, plaintiffs informed defendant of their projected requirement of 1,025 metric tons of PANEX 35 for 2005. In December 2004, defendant announced that it had entered into a contract to supply carbon fibers to Vestas Wind Systems, one of plaintiffs' customers. On January 19, 2005, defendant informed plaintiffs that Zoltek would not supply PANEX 35 under the 2000 Supply Agreement.

On February 22, 2005, plaintiffs filed a one-count complaint claiming that defendant's refusal to supply PANEX 35 was a breach of the 2000 Supply Agreement. Plaintiffs also filed a motion for preliminary injunction, seeking an order directing defendant to supply PANEX 35. Defendant opposed the motion, asserting that the Supply Agreement applied only to PANEX 33. After a hearing, the Court denied plaintiffs' motion for injunctive relief. The Court found that, while the Supply Agreement clearly obligated defendant to supply PANEX 33, plaintiffs had not adequately shown that the agreement also applied to PANEX 35. During the hearing, defendant

represented to the Court that it was "ready, willing and able" to supply PANEX 33 to plaintiffs.  On the following day, plaintiffs placed orders for 560 metric tons of PANEX 33.  On April 29, 2005, defendant requested documentation that the orders reflected plaintiffs' actual, good faith requirements for the product.  The defendant also demanded assurance that plaintiffs could pay for the quantity of product ordered, citing a "history of late payments" and plaintiffs' failure to return a shipment of PANEX 33 that was rejected for quality concerns.  On May 6, 2005, SP Systems responded:  "We also dispute that SP has a history of making late payments to Zoltek.  If there are particular outstanding payments that are a source of dispute, please alert us immediately, and we will address the alleged problem.  To the extent you seek written assurances of our ability to pay for the PANEX 33 that we have ordered, we hereby assure you that we will be able to provide full timely payments for timely shipments."  Defendant rejected the letter as adequate assurance.  Plaintiffs then amended their complaint to add a claim for anticipatory repudiation of the Supply Agreement based upon defendant's refusal to supply PANEX 33.

### III. Discussion

Defendant argues it is entitled to summary judgment on plaintiffs' PANEX 33 claim for the following reasons:  First, plaintiffs' order on April 27, 2005, for 560 metric tons of PANEX 33 was unreasonably disproportionate to plaintiffs' previous orders for the product, and did not represent plaintiffs' actual, good faith needs.  Second, defendant asserts that plaintiffs have

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

repudiated the Supply Agreement by refusing to offer adequate assurance of their ability to perform. Defendant finally argues that its performance is commercially impracticable due to the inability of its supplier to provide precursor.

## A. Unreasonably Disproportionate Order

Defendant contends that plaintiffs' order for 560 metric tons of PANEX 33 is "unreasonably disproportionate" to their prior orders for the product. Specifically, defendant points to plaintiffs orders of 2.73 metric tons in 2000, between 6.38 and 6.784 metric tons in 2001, and between .780 and 2.418 metric tons in 2002. Plaintiffs' orders for PANEX 35 were far more robust: in 2004, they ordered 244 metric tons to be delivered that year. Also in 2004, plaintiffs informed defendant that they would require more than 1,000 metric tons to be delivered in 2005.

Section 2-306 of the Uniform Commercial Code governs requirements contracts such as the Supply Agreement and provides as follows:

> A term which measures the quantity by the . . . requirements of the buyer means such actual . . . requirements as may occur in good faith, except that **no quantity unreasonably disproportionate to** any stated estimate or in the absence of a stated estimate to **any normal or otherwise comparable prior . . .requirements** may be . . . demanded.

§ 400.2-306, Mo. Rev. Stat. (emphasis added).

Defendant insists it is not proper to consider plaintiffs' orders for PANEX 35 when addressing the proportionality of the order for 560 metric tons of PANEX 33. However, it remains an open question whether the Supply Agreement obligated defendant to fill

-6-

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

plaintiffs' orders for PANEX 35 as well as PANEX 33, in which case the 560 metric tons must be considered in the context of the entire order history. Accordingly, defendant's argument on this point must be rejected.

Defendant further contends that plaintiffs failed to document that they have an actual, good faith need for the quantity of carbon fiber they ordered. The record shows that plaintiff's orders for PANEX 35 increased in quantity during 2004; indeed, within two months of the April 2004 Supply/Purchase Agreement, plaintiffs increased the required minimum order of 160 metric tons more than 50%. By July 2004 (before this lawsuit was filed), plaintiffs were projecting that their needs in 2005 would be more than four times greater than in 2004. Given these circumstances, it cannot be said that plaintiffs, as a matter of law, have not demonstrated a good faith need for the quantity of PANEX 33 they ordered.

### B. Plaintiffs' Ability to Perform

Defendant argues that plaintiffs repudiated the contract by failing to provide adequate assurance of their ability to perform – presumably, to pay for any PANEX 33 that defendant might deliver.

Section 2-609 of the U.C.C. provides:

(1) A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return.

-7-

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

(2) Between merchants the reasonableness of grounds for insecurity and the adequacy of any assurance offered shall be determined according to commercial standards.

\* \* \*

(4) After receipt of a justified demand failure to provide within a reasonable time not exceeding thirty days such assurance of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract.

§ 400.2-609, Mo. Rev. Stat.

Defendant contends that it has "reasonable grounds" for insecurity in that plaintiffs placed an order for an "unprecedented quantity" of product. As discussed above, however, it has not been shown that the 2005 order was "unprecedented" in light of the plaintiffs' order history. Defendant also contends that plaintiffs have a history of late payments, and on one occasion failed to return a rejected shipment of PANEX 33. In support of this contention, defendant cites a letter dated April 29, 2005, after the commencement of the lawsuit and after the 2005 order was placed. Defendant cites no contemporaneously-created correspondence, invoices or billing statements indicating late payments, and the Court finds that a genuine dispute of material fact exists with regard to whether defendant had reasonable grounds for insecurity.

### C. Impossibility of Performance

Defendant argues that its performance is excused because Acordis is in "administration" (the equivalent of filing for bankruptcy, in the United Kingdom) and can no longer provide the precursor material needed for manufacturing PANEX 33. Because

-8-

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

defendant cannot produce PANEX 33 without the Acordis precursor, defendant argues that performance of its obligation under the Supply Agreement has become impracticable.

Section 2-615 of the U.C.C. provides as follows:

(a) Delay in delivery or non-delivery in whole or in part by a seller . . . is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency the non-occurrence of which was a basic assumption on which the contract was made . . . .

§ 400.2-615(a), Mo. Rev. Stat.

This section excuses performance by a seller under the doctrine of "commercial impractability." See id. Comment 1. Three conditions must be satisfied before performance is excused under this doctrine: (1) a contingency has occurred; (2) the contingency has made performance impracticable; and (3) the nonoccurrence of that contingency was a basic assumption upon which the contract was made. Waldinger Corp. v. CRS Group Engineers, Inc., Clark Dietz Div., 775 F.2d 781, 786 (7th Cir. 1985). The rationale for the doctrine is that the circumstance causing the breach has rendered performance so vitally different from what was anticipated that the contract cannot be reasonably thought to govern. Id. (quoting Eastern Air Lines, Inc. v. McDonnell Douglas Corp., 532 F.2d 957, 991 (5th Cir. 1976)). Because the purpose of a contract is to place the reasonable risk of performance upon the promisor, that party is presumed to have agreed to bear any loss occasioned by an event that was foreseeable at the time of contracting. Id. The party claiming commercial impracticability bears the burden of

-9-

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

proof. <u>Missouri Pub. Serv. Co. v. Peabody Coal Co.</u>, 583 S.W.2d 721, 725-27 (Mo. Ct. App. 1979).

The central issue in the application of the doctrine of impractability is foreseeability. If the risk of the occurrence of the contingency was foreseeable, the risk is tacitly assigned to the seller. <u>Waldinger Corp.</u>, 775 F.2d at 786 (citing <u>Barbarossa & Sons, Inc. v. Iten Chevrolet, Inc.</u>, 23 U.C.C.Rep. Serv. 1183, 1188 (Minn. 1978)). The defense of impracticability is unavailable where a contingency is foreseeable because the disadvantaged party could have contractually protected itself. <u>Id</u>.

Defendant insists that Acordis is the sole source of precursor for PANEX 33 and argues that it must be excused from performance by virtue of Acordis's failure as a supplier. This argument is unavailing for several reasons. First, the Supply Agreement did not specify a source for the precursor for PANEX 33. See <u>Alamance County Bd. of Educ. v. Bobby Murray Chevrolet, Inc.</u>, 465 S.E.2d 306, 310-11 (N.C. Ct. App. 1996) (dealership not excused from obligation to supply bus chassis by the failure of General Motors to timely deliver where contract did not specify source of chassis). Second, the Supply Agreement contains no provision excusing defendant from performance in the event of the failure of its supplier. <u>Id</u>. Third, it was foreseeable that Acordis might be unable to provide the precursor, particularly after defendant began manufacturing its own precursor. The Court will deny defendant's motion for summary judgment on this basis.

Accordingly,

-10-

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment on Count II of plaintiffs' second amended complaint [#50] is **denied**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 14th day of September, 2006.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com