UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STRUCTURAL POLYMER GROUP, LTD., and STRUCTURAL POLYMER SYSTEMS, LTD., | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) No. 4:05-CV-321 (CEJ) ) |
| ZOLTEK CORPORATION, | ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on plaintiffs' request for specific performance, following jury verdicts in their favor in this breach of contract action. Defendant opposes plaintiffs' request. Also, the defendant requests that entry of the judgment be stayed.

A complete description of the parties' dispute can be found in the Court's rulings on defendant's three motions for summary judgment. In brief, on November 6, 2000, the parties signed a Supply Agreement pursuant to which defendant agreed to supply 100% of plaintiffs' needs for carbon fibers through December 31, 2010. Plaintiffs brought suit in 2005 alleging in Count I that defendant breached the parties' agreement by refusing to provide PANEX 35; they alleged in Count II that defendant failed to provide PANEX 33. Defendant filed a counterclaim for breach of contract. The matter proceeded to trial on November 6, 2006.

On November 29, 2006, the jury returned verdicts in favor of plaintiffs on both counts for breach of contract and on defendant's counterclaim. Damages were awarded in the amount of $21,138,518 on

Count I and $14,906,377 on Count II, representing plaintiffs' "actual damages" on each claim through December 31, 2006. The jury awarded no damages on plaintiffs' claims for future damages through December 31, 2010, when the Supply Agreement expires. Plaintiffs now assert that the jury verdicts entitle them to an order for specific performance of the contract, and ask the Court to direct defendant to manufacture, sell and supply 100% of plaintiffs' needs for large filament count carbon fiber for the period January 1, 2007, through December 31, 2010.

"It is axiomatic that specific performance will not be ordered when the party claiming breach of contract has an adequate remedy at law." LaClede Gas Co. v. Amoco Oil Co., 522 F.3d 33, 39-40 (8th Cir. 1975) (addressing Missouri law). A remedy at law adequate to defeat the grant of specific performance "must be as certain, prompt, complete, and efficient to attain the ends of justice as a decree of specific performance." Id. at 40. The party requesting specific performance bears the burden of establishing entitlement by "clear, convincing, and satisfactory evidence." DeWitt v. Lutes, 581 S.W.2d 941, 946 (Mo. Ct. App. 1979).

Defendant contends that plaintiffs have an adequate remedy at law as demonstrated by the fact that their expert was able to calculate future lost profit damages. However, "the remedy at law for damages and the remedy in equity for specific performance are not exclusive of each other, but are cumulative where the remedy at law is inadequate." Home Shopping Club, Inc. v. Roberts Broadcasting Co., 989 S.W.2d 174, 180 (Mo. Ct. App. 1998)

-2-

(liquidated damages provision in contract did not foreclose order of specific performance). The fact that plaintiffs placed a dollar value on future lost profits does not automatically foreclose an order of specific performance.

The Court also is not persuaded by defendant's contention that an order for specific performance would be inconsistent with the jury's decision to award no prospective damages to the plaintiffs. Defendant argues that, in reaching this decision, the jury must have rejected plaintiffs' evidence that they could sell prepreg as soon as they received fiber from defendant. It is equally likely, however, that the jury believed that plaintiffs would incur no future damages because defendant would perform under the contract by supplying fiber.

The Court's disagreement with defendant's arguments does not end the analysis, however. The Court must examine the record to determine whether plaintiffs have met their burden with "clear, convincing, and satisfactory" evidence. DeWitt, 581 S.W.2d at 946. Missouri law provides that specific performance "may be decreed where . . . goods are unique or in other proper circumstances." Mo. Rev. Stat. § 400.2-716(1). "Uniqueness" is no longer limited to the sale of one-of-a-kind items; indeed, requirements contracts "involving a particular or peculiarly available source . . . present today the typical commercial specific performance situation." Id. cmt.2. The alternative basis for awarding specific performance -- "other proper circumstances" -- can be demonstrated by an inability to cover. Id.

-3-

Plaintiffs assert that there is a massive worldwide shortage of carbon fiber that prevents them from obtaining cover elsewhere. They argue that this circumstance is analogous to the following cases in which specific performance was awarded:

In <u>Sedmak v. Charlie's Chevrolet</u>, 622 S.W.2d 694, 700 (Mo. Ct. App. 1981), the court determined that plaintiffs were entitled to specific performance on a contract for sale of a Pace Car. Plaintiffs presented evidence that only 6,000 of these cars were manufactured. Of those, only a few were equipped with the special features plaintiffs had requested, and only one car was available to each dealership. In <u>Boeving v. Vandover</u>, 218 S.W.2d 175 (Mo. Ct. App. 1949), the court found that specific performance for the sale of a car was warranted during a shortage where "it was impossible to buy a car for immediate delivery without going on the black market and paying a bonus," and acquiring a car from another dealer might take one to two years. In <u>LaClede Gas Co.</u>, the court ordered specific performance of a requirements contract, where the plaintiff's propane distribution lines were directly connected to the defendant supplier's header piping. Plaintiff could not "own and operate a separate distribution system hooked up to some other supplier's propane storage tanks without substantially altering the supply route to its distribution system or making a very substantial investment in its own storage equipment and site."

The plaintiffs in the above-cited cases sought specific performance as their principal remedy and thus the factual records regarding the "uniqueness" of the product were fully developed. In

-4-

this case, plaintiffs' breach of contract claims did not require them to prove the existence of a fiber shortage, and their damages calculations were based on defendant's refusal to supply amounts ascertainable under the terms of the contract. The evidentiary record supports, at most, a general finding that there is a shortage of large-tow carbon fiber. Missing from this record is specific evidence regarding the identity of other suppliers of large-tow carbon fiber, their production capacity, whether plaintiffs have attempted to obtain cover from them, or when they might have fiber available to sell to plaintiffs. Indeed, some evidence suggests that the shortage is a comparatively recent phenomenon that will normalize in 2008. Furthermore, while the supply of large-tow carbon fiber is presently restricted, there is no evidence that there is a similar shortage of small-tow fibers. This fact affects plaintiffs' ability to find cover because they successfully used smaller-tow products in the past when defendant's product suffered from uneven quality. Based upon its review of the evidence, the Court finds that plaintiffs have failed to meet their burden with "clear, convincing, and satisfactory" evidence and thus will not order specific performance.

Notwithstanding the jury's verdicts on future damages and the Court's denial of specific performance, the Supply Agreement has not been terminated and remains in effect until December 31, 2010, "unless and until terminated by the terms of this Agreement . . . ." Defendant is obligated "to manufacture for and sell and supply 100%" of plaintiffs' needs for "Large Filament Count Carbon Fibers

as defined by Zoltek PANEX 33 specifications." The jury's verdict on Count I conclusively establishes that the Supply Agreement includes PANEX 35, a product that defendant manufactures today. Thus, the parties' obligations under the Supply Agreement have now been clarified.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' request for specific performance is **denied**.

**IT IS FURTHER ORDERED** that the defendant's request to stay entry of the judgment is **denied**. The Clerk of Court is directed to enter judgment in accordance with the jury's verdicts.

**IT IS FURTHER ORDERED** that defendant's motion for hearing [#384] is **denied as moot.**

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 7th day of December, 2006.