```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION
```

STRUCTURAL POLYMER GROUP, LTD., )
and STRUCTURAL POLYMER          )
SYSTEMS, LTD.,                  )
                                )
            Plaintiffs,          )
                                )
       vs.                       )      No. 4:05-CV-321 (CEJ)
                                )
ZOLTEK CORPORATION,             )
                                )
            Defendant.           )

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion for a new trial. Plaintiffs have filed an opposition to the motion and the issues are fully briefed.

Plaintiffs filed a two-count complaint alleging that defendant refused to supply large-tow carbon fiber in breach of a ten-year requirements contract. They alleged in Count I that defendant breached the parties' agreement by refusing to provide PANEX 35 and in Count II that defendant failed to provide PANEX 33. On November 29, 2006, a jury entered verdicts in favor of plaintiffs in the amount of $21,138,518 on Count I and $14,906,377 on Count II for "actual damages" through December 31, 2006. The jury awarded no damages on plaintiffs' claims for future damages through December 31, 2010, when the Supply Agreement expires. Judgment was entered on the verdicts on December 7, 2006.

Defendant moves for a new trial on the following bases:[1] (A) the Court erred in prohibiting defendant from introducing evidence, and making arguments to the jury, that the Supply Agreement lacked exclusivity; (B) the Court erred in admitting a statement made by counsel at the preliminary injunction hearing that defendant was "ready, willing and able" to perform the Supply Agreement, and having admitted the statement, the Court erred in precluding defendant from citing other statements by counsel regarding plaintiffs' breaches of the Supply Agreement; (C) the Court erred in admitting Donna Beck Smith's expert testimony and damages calculations; (D) the Court erred in refusing to admit an internal e-mail; (E) the Court erred in admitting evidence that reflected negatively on the character of Zsolt Rumy; (F) the Court erred in refusing to submit defendant's proposed instructions on abandonment; and (G) the Court erred in prohibiting defendant from introducing evidence of the financial consequences of verdicts in favor of plaintiffs.

I. **Legal Standard**

Rule 59(a), Fed.R.Civ.P., states in pertinent part: "A new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trial have heretofore been granted in actions at law in the courts of the

---

[1] Defendant's motion for a new trial asserts bases for relief that are not addressed in its memorandum in support or in its reply memorandum. The Court deems abandoned any claims for relief not supported by argument or citation to legal authority.

United States." A new trial may be sought on the grounds that the verdict is against the weight of the evidence, that the damages are excessive, or that the district court made substantial errors in the admission or rejection of evidence or in its instructions to the jury. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940). The key question is whether a new trial should be granted to avoid a miscarriage of justice. McKnight v. Johnson Controls, 36 F.3d 1396, 1400 (8th Cir. 1994).

## II. Discussion

### A. Lack of Exclusivity

In order to constitute a true requirements contract, an agreement must bind the buyer to purchase exclusively from the seller. See Kirkwood-Easton Tire Co. v. St. Louis County, 568 S.W.2d 267, 268 (Mo. 1978) (*en banc*). Without such exclusivity or some other form of consideration flowing from the buyer to the seller, mutuality and consideration are lacking. Propane Industrial, Inc. v. General Motors Corp., 429 F. Supp. 214, 219 (W.D. Mo. 1977) (applying Kansas law).

Defendant contends that the Supply Agreement lacks exclusivity because its terms permitted plaintiffs to purchase elsewhere small-tow carbon fiber or large-tow carbon fiber offered at lower cost. The Court precluded defendant from submitting evidence or argument on this issue because it was not asserted in its original answer and the Court denied defendant leave to amend its answer to assert the defense as untimely filed. Defendant seeks a new trial on this basis.

Defendant first sought to assert a defense that the Supply Agreement lacked exclusivity on May 12, 2006, when it requested leave to amend its answer. This request was made six months after the deadline for amending pleadings established by the Case Management Order, and more than a year into the litigation. During that year, the parties engaged in extensive motions practice.[2] At no time during these proceedings did defendant contend that contract was unenforceable because it lacked exclusivity.

Defendant's request to amend its answer was made after new counsel entered on its behalf. The Court examined the request under Rule 16(b), which requires the moving party to show "good cause" for amending the deadlines established by the Case Management Order. If the party seeking modification "was not diligent, the inquiry should end." Archer Daniels Midland Co. v. Aon Risk Services, Inc. of Minnesota, 187 F.R.D. 578, 584 (D. Minn. 1999). Defendant stated that it needed to amend the answer based upon review of materials that had been produced in December 2005 and January 2006. Because the information justifying the amendment was in defendant's possession for several months, the Court determined that defendant had failed to establish good cause and denied leave to amend. Defendant moved to correct the order,

---

[2]The parties appeared for a hearing on plaintiffs' motion for preliminary injunction; plaintiffs sought leave, which defendant opposed, to amend their complaint to add a new count for breach of contract based upon events occurring after the commencement of the litigation; defendant filed an answer and counterclaim and answered the amended complaint; defendant filed and the parties extensively briefed two motions for summary judgment.

arguing, *inter alia*, that it had shown good cause; *i.e.,* discovery takes time to review. The Court denied defendant's motion. Defendant now acknowledges that its argument regarding consideration is a matter of the contract language and that no further discovery was necessary. Defendant still has not articulated good cause for permitting it to amend the answer to state a defense that was available to it from the onset of the litigation.

Defendant argues that lack of exclusivity is not an affirmative defense and thus it was not required to plead it in order to present evidence on this issue. "Failure of consideration" appears in Rule 8(c) as one of the enumerated defenses that must be pleaded. Defendant contends that "lack of consideration" is not the same as "failure of consideration" and that, "If the defense involved is one that merely negates an element of the plaintiff's prima facie case . . . it is not truly an affirmative defense and need not be pleaded despite Rule 8(c)." Sanden v. Mayo Clinic, 495 F.2d 221, 223-24 (8th Cir. 1974). Defendant argues that plaintiffs bear the burden of proving the existence of a valid contract and that "lack of consideration" merely negates the existence of that element. Thus, defendant asserts, the defense is not waived and the Court erred by barring evidence on this point.

The Supply Agreement expressly states that plaintiffs are required to buy all their requirements of large-tow carbon fiber from defendant. Thus, on the face of the agreement, there is

mutuality of obligation and, therefore, consideration. Defendant has not addressed the impact of this express statement on determining whether or not, in this case, lack of exclusivity is an affirmative defense. The Court will deny defendant's request for a new trial on this point.

### B. Admission of Counsel's Statement

On April 26, 2005, the Court held a hearing on plaintiffs' motion for preliminary injunction to compel defendant to provide PANEX 35. Defendant challenged plaintiffs' right to PANEX 35 under the Supply Agreement, which defined the product as "Large Filament Count Carbon Fibers (the 'Carbon Fibers') as defined by Zoltek PANEX 33 specifications." In the course of opposing the motion, Alan Kohn, who was then counsel for defendant, stated, "All they have is some old PANEX 33 contract which defendant is ready, willing, and able to perform." Defendant challenges the Court's evidentiary rulings that permitted plaintiffs to admit Mr. Kohn's statement and excluded those portions of Mr. Kohn's argument in which he listed plaintiffs' numerous breaches of the Agreement, which he contended excused defendant from further performance.

The following exchange occurred during the deposition of defendant's chief executive, Zsolt Rumy:

    Q:    Were you at the hearing where Mr. Kohn represented that Zoltek was ready, willing and able to perform the Supply Agreement regarding PANEX 33?

    A:    Unfortunately, yes.

    Q:    And that wasn't a true statement, was it?

> A: That was not a true statement, and it was not an authorized statement.

The above segment of the deposition was presented at trial during cross-examination of Mr. Rumy. Mr. Rumy was then asked:

> Q: And it wasn't true that Zoltek was ready, willing, and able to perform that agreement?
>
> A: The – first of all, it is a mischaracterization of what he said. In balance, what he said was -- was reasonable.

During redirect, Mr. Rumy testified as follows:

> Q: [Y]ou ended your testimony by saying in your opinion after you looked at it overall [Mr. Kohn's] statement was reasonable. What did you mean by that?
>
> A: Well, he – he basically stated in my understanding is that he – there was a failed or an old contract which we would be ready, willing, and able to perform against if it [weren't] breached by multiple breaches. So in total what he said was acceptable. That unfortunate single statement by itself it is not representative of what should have [been] said.
>
> * * *
>
> Q: In terms of the statement – the ready, willing statement – is it your testimony that that statement standing alone is incorrect?
>
> A: That's correct.
>
> * * *
>
> Q: With respect to the ready, willing statement in context to everything Mr. Kohn said that day – and you mentioned he referenced several breaches of the contract by SP?
>
> A: That's right.
>
> Q: Did you then have an opinion overall as to whether that statement, taken in context, was [acceptable] regarding SP's breaches of contract?
>
> A: As an overall, balanced statement, I thought it was acceptable.

The Court believes that defendant was able to place before the jury its view of what Mr. Kohn's statement meant. Defendant also presented evidence regarding what it considered to be plaintiffs' breaches of the Supply Agreement. Based upon the record as a whole, even if the admission of Mr. Kohn's statement was erroneous, the Court cannot say that it resulted in prejudice to defendant, let alone a miscarriage of justice.

### C. Testimony of Donna Beck Smith

Defendant contends that the Court erred in admitting the damage calculations and testimony of plaintiffs' expert witness, Donna Beck Smith, as lacking sufficient foundation.

Pursuant to Fed.R.Evid. 703, an expert may rely on otherwise inadmissible hearsay evidence in forming opinions so long as the facts and data relied on are of a type reasonably relied upon by experts in the field. When an expert's opinion is partly based on hearsay that does not satisfy Rule 703 requirements, the opinion is nevertheless admissible if it is supported by the other independent bases upon which the expert relied in reaching the opinion. <u>Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.</u>, 125 F.3d 1176, 1182 (8th Cir. 1997). The factual basis of an expert's report goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. <u>Id.</u> at 1183. Only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded. <u>Id.</u>

Defendant first objects that plaintiffs never produced the underlying documents that formed the basis for Ms. Smith's calculations. Ms. Smith relied upon information provided to her by Andrew Day and David Schofield. Mr. Day, who was the Managing Director through December 31, 2005, testified that he provided Ms. Smith with "budgeted figures" for sales and profit margins. He excerpted this information from reports kept in the ordinary course of business.[3] Ms. Smith testified that it was reasonable practice in the field to rely upon information summaries provided by management.

Defendant also argues that, under Fed.R.Evid. 1006, plaintiffs had an obligation to produce the underlying documents that were summarized in Exhibit 368. Defendant acknowledges that plaintiffs did not introduce the exhibit into evidence and thus Rule 1006 is not directly applicable. However, defendant argues, the underlying documents were responsive to defendant's discovery requests at the outset of the litigation. As the Court noted at trial, however, defendant learned that Ms. Smith relied on management representations when she gave her deposition in December 2005. Defendant did not ask the Court to compel production at any time before trial and thus could not be heard to complain in the midst of trial.

---

[3]Defendant objected to Mr. Day's testimony as lacking foundation because the documents from which he derived these figures were not produced.

In her initial report completed on December 9, 2005, Ms. Smith relied upon Mr. Day's 2005 budgeted figures for its two primary customers, Vestas and Gamesa. Ms. Smith applied a 35% profit margin to the anticipated sales (discussed below), and subtracted plaintiffs' variable costs to determine projected profits for 2005. She then subtracted plaintiffs' actual profits from sales to Vestas and Gamesa for 2005. Defendant asserts that Ms. Smith's analysis is unreliable because she relied on Mr. Day's representation of plaintiffs' budgeted sales. Ms. Smith testified that when she compared the amount budgeted for 2005 with actual purchases the amounts were substantially equal. Plaintiffs also presented evidence of actual sales in 2005 and 2006. The Court concludes that there was sufficient foundation for the admission of Ms. Smith's opinion. It was for the fact-finder to determine the credibility of Ms. Smith's analysis.

Defendant also challenges Ms. Smith's determination that the profit margin was 35%. Ms. Smith derived this figure from the following sources: First, plaintiffs had premised their 2005 budget on a 35% profit margin. The 35% figure was confirmed by actual performance from January 2005 through June 2006. In addition, Zsolt Rumy testified at his deposition that profit margins for prepreggers would be 35% or more. Finally, defendant had premised a 35% gross profit margin to investors. Based upon the above, Ms. Smith concluded that a 35% profit margin was appropriate to use in her damages calculations. Once again,

defendant had an opportunity to cross-examine Ms. Smith and place all relevant issues before the jury.

Shortly before trial, plaintiffs asked Ms. Smith to update her calculations to eliminate sales to Gamesa from her offset to the profits.[4] This resulted in a significantly higher damages figure. Defendant complains that it was unfairly surprised by the change in her analysis. Plaintiffs countered that it was merely asking Ms. Smith to present another calculation based upon a changed assumption – that all carbon fiber processed on behalf of Gamesa in 2005 was pursuant to an agreement between defendant and Gamesa. Ms. Smith did not offer an opinion that this was a better method for calculating damages.

Based upon its review of the record, the Court concludes that defendant has failed to establish that it is entitled to a new trial on this basis.

### D. Exclusion of Exhibit S-6

Defendant sought to introduce Exhibit S-6, an e-mail dated October 13, 2004, authored by Paul Lyon and sent to Adrian Williams and James Austin. Defendant attempted to introduce this e-mail during redirect examination of its final witness, Tim McCarthy. Plaintiffs objected to its admission, on the ground that they would not have the chance to submit Mr. McCarthy to further cross-examination or to question the participants in the e-mail exchange.

---

[4]There was evidence at trial that in 2005 defendant shipped plaintiffs PANEX 35 pursuant to an agreement between defendant and Gamesa. The parties disputed the impact of those shipments upon plaintiff' damages.

-11-

The Court excluded the e-mail, stating that it should have been introduced either when Mr. Lyon testified or during the direct examination of Mr. McCarthy.

Defendant contends that admission of the exhibit during redirect examination was necessary to counter plaintiffs' mischaracterization of Exhibit 56 during cross-examination. Exhibit 56 was an e-mail dated September 20, 2004, from Mr. McCarthy to plaintiffs, in which Mr. McCarthy noted that plaintiffs wanted 1,000 tons of carbon fiber in 2005. Mr. McCarthy stated that this volume could not be confirmed. He went on to state that "Minimum coverage is set for 500 tons -- the extra 500 will need an added level of assurance that [plaintiffs] will take it." Defendant asserts that plaintiff used this exhibit on cross-examination to improperly suggest that defendant promised to supply 500 tons of PANEX 35 in 2005. Defendant sought to counteract this suggestion with the following statement from Exhibit S-6: "Current negotiations suggest that [defendant] can accept to supply 500 tonnes to us in year 2005 but, in truth, the exact scale could be greater, or less, depending upon [factors related to defendant's production capacity]."

According to defendant, this statement establishes that plaintiffs knew that the quantity of carbon fiber to be supplied in 2005 was still under negotiation. The evidence supports a finding that Mr. McCarthy undertook to supply some amount of carbon fiber in 2005; however, it is undisputed that, early in 2005, defendant notified plaintiffs that it would not supply any whatsoever. In

light of this evidence, and without expressing an opinion as to the meaning of the quoted statement, the Court finds that its exclusion did not prejudice defendant.

### E. Evidence of Zsolt Rumy's Character

Defendant complains that the Court impermissibly permitted plaintiffs to present evidence regarding Zsolt Rumy's character. Such evidence was, defendant asserts, "irrelevant, inflammatory, distracting, and prejudicial." The Court has reviewed the testimony defendant complains of and finds that it was not improperly admitted. Even if its admission was error, the Court does not believe it was prejudicial.

### F. Refused Instruction on Abandonment

"In order to prove that a contract was abandoned, the abandonment must be demonstrated by positive and unequivocal acts . . . demonstrating a mutual intention to abandon the contract." Waddington v. Wick, 652 S.W.2d 147, 150 (Mo. Ct. App. 1983). Defendant contended at trial that the evidence established that plaintiffs abandoned the agreement. The Court ruled that defendant had not made a submissible case that the parties mutually abandoned the Supply Agreement and thus refused to offer defendant's proposed instruction. The Court has reviewed the record and concludes that the original ruling was correct.

### G. Exclusion of Evidence Regarding Financial Consequences of a Verdict in Plaintiffs' Favor

The Court granted plaintiffs' motions *in limine* to exclude evidence of the impact upon defendant of a verdict in favor of

-13-

plaintiffs.  In 2004 and 2005, defendant entered into agreements with Vestas and Gamesa and it lacks adequate capacity to fulfill all its contract obligations.  Defendant now asserts that such evidence would have been relevant to its claim that the parties abandoned the Supply Agreement.  Defendant did not assert this rationale at trial, and thus it will not be considered at this time.  Defendant also contends that evidence of its agreements with Vestas and Gamesa is relevant to its claim that it believed plaintiffs breached the Supply Agreement.  Defendant presented other evidence that it believed plaintiffs were in breach.  The Court does not believe that defendant has demonstrated that it was prejudiced by the exclusion of this evidence, in the event that it was erroneously excluded.

In summary, after a review of the record and in light of the applicable standard, the Court concludes that defendant has failed to establish that it is entitled to a new trial.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for a new trial [#397] is **denied**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 11th day of April, 2007.