UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

STRUCTURAL POLYMER GROUP, LTD., )
and STRUCTURAL POLYMER )
SYSTEMS, LTD., )
　)
　　　　Plaintiffs, )
　)
　　vs. ) No. 4:05-CV-321 (CEJ)
　)
ZOLTEK CORPORATION, )
　)
　　　　Defendant. )

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant's motion to alter judgment. Plaintiffs have filed an opposition to the motion and the issues are fully briefed.

Plaintiffs filed a two-count complaint alleging that defendant refused to supply large-tow carbon fiber in breach of a ten-year requirements contract. They alleged in Count I that defendant breached the parties' agreement by refusing to provide PANEX 35 and in Count II that defendant failed to provide PANEX 33. On November 29, 2006, a jury entered verdicts in favor of plaintiffs in the amount of $21,138,518 on Count I and $14,906,377 on Count II for "actual damages" through December 31, 2006. The jury awarded no damages on plaintiffs' claims for future damages through December 31, 2010, when the Supply Agreement expires. Judgment was entered on the verdicts on December 7, 2006.

Defendant moves to amend or alter the judgment, pursuant to Rule 59(e), asserting the following bases for relief: (A) the damages awarded for Count I and Count II are duplicative; (B) the jury award on Count I is unsupported by the evidence and contrary

to the terms of the Supply Agreement; and (C) the damage awards on Count I and Count II should be offset by plaintiffs' profits.

I.  **Legal Standard**

There are four basic grounds upon which a Rule 59(e) motion may be granted: to correct manifest errors of law and fact upon which the judgment is based; to present newly discovered or previously unavailable evidence; to prevent manifest injustice; and to respond to an intervening change of controlling law. Charles Alan Wright, et al., 11 Federal Practice and Procedure § 2810.1 (3d ed. 1995). The Rule 59(e) motion may not be used to relitigate old arguments or to raise arguments or evidence that could have been raised prior to the entry of judgment. Id.

II.  **Discussion**

A.  **Duplicative Jury Awards**

Defendant argues that Counts I and II of plaintiffs' amended complaint were alternative theories of recovery for a single injury, *i.e.*, defendant's refusal to supply carbon fiber in 2005 and 2006. Defendant contends that when a jury awards damages in different amounts for a single injury, the Court must enter judgment on the greatest of the amounts supported by the evidence.

A brief summary of the evidence related to damages is in order. Plaintiffs' damages expert, Donna Beck Smith, calculated lost profit damages[1] under two different scenarios: In the first

---

[1] Ms. Smith testified that she limited her calculations to the amount of carbon fibers plaintiffs needed to meet the needs of their two biggest customers, Vestas and Gamesa.

-2-

scenario, she assumed that the Supply Agreement applied to both PANEX 33 and PANEX 35. The evidence at trial established that plaintiffs ordered 548,935[2] pounds of PANEX 35 in 2004. Under the operation of the Agreement's quantity provision,[3] plaintiffs were entitled to order 1,548,935 pounds of PANEX 35 in 2005; however, they expected to order only 1,480,138 pounds and they adopted this figure in calculating damages. Under normal operation of the Agreement, then, plaintiffs were entitled to order 2,480,138 pounds in 2006. Ms. Smith testified that, based on those quantities, plaintiffs' damages for lost profits through December 31, 2006 were $21,138,518.[4] This is the amount that the jury awarded as damages for Count I.

In the second scenario, Ms. Smith assumed that the Supply Agreement was limited to PANEX 33. Plaintiffs ordered no PANEX 33 in 2004 and thus, pursuant to the Agreement's quantity provision, were entitled to order a maximum of 1,000,000 pounds in 2005, and 2,000,000 pounds in 2006. Ms. Smith calculated plaintiffs' lost profit damages through December 31, 2006 under this scenario as

---

[2]Plaintiffs received only 370,440 pounds of this amount due to defendant's breach of the Supply Agreement. As discussed briefly below, defendant attempts to limit plaintiffs' recovery under Count I based upon this artificially lowered quantity.

[3]The "Quantity" provision stated that the maximum quantity defendant was obligated to provide during each contract year was the amount plaintiffs purchased in the preceding year plus 1,000,000 pounds.

[4]Ms. Smith offset the lost profits by $3,024,457, which reflects savings to plaintiffs through workforce reductions necessitated by their inability to obtain carbon fiber.

-3-

$14,906,377. This is the amount that the jury awarded as damages for Count II.

"The law in Missouri is that a plaintiff may not recover duplicate damages for the same harm." Sellers v. Mineta, 350 F.3d 706, 713-14 (8th Cir. 2003), citing Alexander v. Kansas City Public Service Co., 268 S.W.2d 451, 454 (Mo. Ct. App. 1954) (finding impermissible "double damages" where plaintiff was awarded $50,000 compensatory damages and $50,000 punitive damages for assault claim and again for battery claim). Although a party is entitled to proceed on various theories of recovery, a party is not entitled to collect multiple awards for the same injury. EFCO Corp. v. Symons Corp., 219 F.3d 734, 742 (8th Cir. 2000); Bold v. Simpson, 802 F.2d 314, 321 (8th Cir. 1986).

Plaintiffs argue that defendant was required to ask for an instruction directing the jury that Counts I and II presented alternative theories of recovery. Certainly, it is permissible to so instruct a jury. See EFCO Corp., 219 F.3d at 742 (district judge specifically instructed the jury not to account for duplication, explaining that it would later modify the damages award to eliminate duplicative amounts); Diversified Graphics, Ltd. v. Groves, 868 F.2d 293, 295 (8th Cir. 1989) (jury instructed that plaintiff entitled to one recovery). The Court has reviewed several cases decided by the Eighth Circuit Court of Appeals that address duplicative damages and finds no suggestion that the argument is waived by the failure to request a jury instruction on the issue. See Sellers, 350 F.3d at 713-14 (district court did not

err by submitting to the jury both assault and battery theories of liability); Washburn v. Kansas City Life Ins. Co., 831 F.2d 1404, 1410-11 (8th Cir. 1987); Grogan v. Garner, 806 F.2d 829, 836-37 (8th Cir. 1986) (discussion of instructions); Bold v. Simpson, 802 F.2d 314 (8th Cir. 1986). The question of duplicative damages does not implicate jury instructions and thus plaintiffs' reliance on Fed.R.Civ.P. 51 is misplaced. See Rule 51(c)(2) (regarding the timing of objections to jury instructions).

Plaintiffs argue that duplicative awards need not be vacated, citing Ellsworth v. Tuttle, 148 Fed. Appx. 653 (10th Cir. 2005). In Ellsworth, plaintiffs purchased ranch land in reliance on the defendants' misrepresentation regarding the number of irrigated acres. A jury awarded plaintiffs compensatory damages in the amount of $805,040 on a claim for fraudulent misrepresentation, $125,000 on a claim for breach of warranty, $14,500 and $7,500 on two claims for breach of contract, and $11,000 on a claim for conversion.[5] Defendants contended that the awards for fraud and breach of warranty were duplicative. The court rejected that argument, noting that the fraud award compensated plaintiffs for the diminished value of the land, while the breach of warranty claim arose from the condition of an irrigation well. Id. at 672-73. Thus, there were two injuries and two awards.

---

[5]Contrary to defendant's assertion, the Tenth Circuit was not "sloppy" when it stated that the jury awarded plaintiffs a total of $33,000 for the breach of contract and conversion claims. Defendant apparently missed the fact that there were two separate claims for breach of contract with separate awards. 148 Fed. Appx. at 656.

-5-

The Ellsworth defendants also attacked as duplicative the $14,500 award for breach of contract and the $11,000 award for conversion. Defendants "argue[d] that the jury found they removed only $14,000 from the 1999 farm account. . . . It nonetheless awarded $14,500 on the breach of contract claim and $11,000 for conversion of the same funds." Id. at 673. The court noted that evidence in the record indicated that defendants improperly took $32,000 from the account. Id. The district court and appellate court declined to vacate either award as duplicative, finding that "the awards did not exceed a reasonable attempt to compensate the [plaintiffs] for the full extent of their loss." Id. The Court cannot tell from the opinion whether the outcome was based upon respect for the jury's award or rather because the court did not agree with defendants' assertion that the jury found that defendants removed only $14,000 from the farm fund. To the extent that the case stands for the principle that duplicative awards should not be vacated so long as there is evidence to support the total amount of the award, it is at odds with Eighth Circuit precedent that is binding on this Court.

Plaintiffs also cite McRoberts Software, Inc. v. Media 100, Inc., 329 F.3d 557 (7th Cir. 2003). In this copyright infringement action, the jury awarded plaintiff $1.2 million dollars in actual damages plus $900,000 in "lost profits."[6] 329 F.3d at 565-66. The

---

[6]"Lost profit damages serve to make the copyright owner whole in cases where the infringer's gain exceeds the owner's losses." Id. at 568.

Seventh Circuit rejected defendant's argument that the awards were duplicative: First, the Copyright Act permits a copyright owner to recover any profits resulting from infringement "that are not otherwise taken into account in calculating actual damages." Id. at 567-68, citing 17 U.S.C. § 504(b).  Second, the jury was instructed not to award lost profits for any amount that was already taken into account in determining actual damages. Id. at 569. McRoberts Software thus is not on point.

Plaintiffs contend that Counts I and II did not assert alternative theories of relief.  Count I was based upon defendant's refusal to provide PANEX 35 in late 2004; Count II was based upon defendant's refusal to supply PANEX 33 in April 2005, after it stated that it was prepared to provide PANEX 33 under the Supply Agreement.  Plaintiffs assert that defendant thus committed two breaches of the Supply Agreement.  Plaintiffs have always contended, however, that the Supply Agreement entitled them to either PANEX 33 or PANEX 35.

Defendant argues that allowing plaintiffs to recover $36,044,895 – the total of the verdicts on Count I and Count II – would compensate them for 3,000,000,000 more pounds of carbon fiber than they were entitled to under the contract, assuming the profit margin adopted by Ms. Smith – 35% – is held constant. Plaintiffs point out that the jury could have concluded that their profit margin was actually much higher.  Such a conclusion would have justified a higher damages award on Count I or on Count II, but does not support a finding that defendant should be liable twice

-7-

for failing to supply carbon fiber during the time frame for which damages are sought.

In summary, the Court concludes that the damage awards for Count I and Count II are duplicative. The case law establishes that the appropriate remedy is for judgment to be entered on the larger of the two verdicts. See <u>EFCO Corp.</u>, 219 F.3d at 742 (larger of four verdicts "reache[d] the outer limit of what EFCO proved were its commercial injuries and damages on all its theories"); <u>Diversified Graphics, Ltd.</u>, 868 F.2d at 295, 297 (vacating the smaller of two awards); <u>Bold</u>, 802 F.2d at 321 (where jury awarded damages on fraud, negligent management, and conversion claims, plaintiff entitled to recover larger of three awards for conversion; the other awards "represent losses which have merged into the value of the property converted.") The judgment will be amended accordingly.

**B.  Evidentiary Basis for Damage Award on Count I**

The Supply Agreement entitled plaintiffs to purchase each year 1,000,000 more pounds of carbon fiber than "actually purchased" the year before. In 2004, plaintiffs ordered 248 tons of PANEX 35, but defendant supplied only 168 tons. Ms. Smith based her damages calculations upon the 248-ton figure. Defendant contends that the calculations are more properly based upon the lower figure, resulting in reduction of $1,300,000. There is little doubt that, absent defendant's breach, plaintiffs would have "actually purchased" 248 tons of carbon fiber. No relief will be provided on this basis.

## C. Damages Were Not Properly Offset by Plaintiffs' Profits

In 2005 and 2006, defendant sold PANEX 35 to Gamesa. Gamesa, in turn, directed defendant to ship the PANEX 35 to plaintiffs for processing. These transactions have no bearing on defendant's obligation to provide carbon fiber to plaintiffs under the Supply Agreement. No relief will be provided on this basis.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to alter judgment [#401] is **granted in part and denied in part**.

An amended judgment in accordance with this Memorandum and Order will be entered.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 11th day of April, 2007.